IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENJAMIN LEE ZIOGAS,<br><br>    Plaintiff,<br><br>v.<br><br>DANIEL CONN, CHERI LAURENT,<br>ROB JEFFREYS, ANTHONY WILLIS,<br>and ANGELA CRAIN,<br><br>    Defendants. | Case No. 23-cv-756-MAB |

## **MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

Plaintiff Benjamin Lee Ziogas, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Ziogas alleges Defendants were deliberately indifferent to his serious medical needs.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint pursuant to 28 USC § 1915A in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford Health Sources, Inc.'s limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections, Wexford Health Sources, Inc. and this Court.

1

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Ziogas makes the following allegations: In March 2022, while housed in segregation, Ziogas sought medical attention for complaints of severe abdominal pain, constipation, blood in stool, and vomiting (Doc. 1, p. 5). He put in numerous sick call slips and acknowledges that he was seen by nurses "a few times" (*Id*.). But the nurses merely told him he was on a waiting list to see a nurse practitioner and that the appointment could be months in the future (*Id*.). He believes one of those nurse visits occurred on March 15, 2022.

During his stint in segregation, his symptoms worsened. He wrote to the healthcare unit and also asked to be seen by medical staff on numerous occasions prior to his release from segregation. He labeled his condition an emergency. He does not recall the dates or the names of staff who he informed of his condition (*Id*.).

Ziogas was released from segregation on March 19, 2022 and was able to see a nurse (*Id*. at p. 6). He informed her of his severe abdominal pain, vomiting, trouble breathing, and rapid heart rate (*Id*.). He also had difficulties keeping food and water down (*Id*.). The nurse called the healthcare unit and explained that Ziogas's condition was urgent (*Id*.). He went to the healthcare unit where he spoke to a nurse, who told him that he was going to an outside hospital (*Id*.). He was transferred to the hospital where he had emergency surgery for a ruptured ulcer in his small intestine (*Id*. at pp. 5-6).

Ziogas alleges that he had a long healing process from the surgery and does not feel that he has fully recovered (*Id*. at p. 6). Ziogas alleges he is currently in segregation and believes that he was placed in segregation due to "bias" and in response to his requests for forms related to his medical care and for asking questions about his medical needs (*Id*.). He also alleges he was charged with a crime as part of his placement in segregation and believes the criminal charge was in retaliation for filing grievances (*Id*. at p. 7).

Ziogas also alleges that he had two surgeries in 2021, though he does not state what those surgeries were for, and he still suffers from issues related to the surgery. He alleges that he has requested post-op follow-ups and filed grievances but has not been seen by the healthcare unit for these conditions.

Ziogas does not identify any specific individual associated with his allegations but alleges that the following people "have control and should have been aware of" his needs: Wexford Health Sources, Inc. because they employ medical staff, Daniel Conn (the president of Wexford), Cheri Laurent (vice present of Wexford), Rob Jeffreys (director of IDOC), Anthony Wills (warden of Menard), and Angela Crain (healthcare unit administrator at Menard).

## Discussion

Simply put, there are a number of issues with Ziogas's Complaint. First, he fails to tie any of the defendants to his allegations. He specifically states that he does not know of any individual that he requested care from at Menard. This is not enough to state a claim. *See* 28 U.S.C. § 1915A; Fed. R. Civ. P. 8. *See also DiLeo v. Ernst & Young*, 901 F.2d

3

624, 627 (7th Cir. 1990) (A successful Complaint generally alleges "the who, what, when, where, and how….").

Instead, Ziogas listed Wexford and officials affiliated with Wexford and IDOC. He does not say what role they played in providing him care; he merely states that they should have been aware and had control over the situation. But there is no indication in the Complaint that any of the named defendants knew about his condition or should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (The relevant inquiry is whether defendants "actually knew about [Plaintiff's] condition, not whether a reasonable official should have known."). Further, none of the officials can be held liable simply for their positions as presidents, directors, wardens, or high-ranking officials because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). There are simply no allegations to suggest that these specific individuals were deliberately indifferent in providing Ziogas care. And Wexford can only be held liable for deliberate indifference if an unconstitutional policy or practice of the corporation caused the constitutional deprivation. Here, Ziogas does not identify any policy or practice that delayed his request for care. Finally, to the extent Ziogas indicates he does not know the names of individuals that he spoke to, Ziogas may certainly allege claims against "John Does" (i.e., John Doe #1, John Doe #2). But he would need to identify them in the caption and provide facts in his Complaint to demonstrate that they were aware of his need for medical care and acted with deliberate indifference in providing him care.

4

Ziogas's claims may also violate the rules of joinder by including all of his grievances together in a single Complaint. Fed. R. Civ. P. 18-21; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."). In addition to his medical claim, he alleges that he was retaliated against by being placed in segregation and "charged for an alleged crime." (Doc. 1, p. 7). He does not indicate who charged him with this crime or the facts surrounding the alleged "retaliation". Although both claims took place while at Menard, the claims do not appear to arise from the same transactions or occurrences and share no common questions of fact. Nor is there any indication that the defendants for each claim would be the same. Should Ziogas continue to pursue the unrelated claims, the unrelated claims would be subject to severance into separate lawsuits, for which he will owe a filing fee and may also incur a "strike" within the meaning of 28 U.S.C. § 1915(g).

According, Ziogas' Complaint is **DISMISSED without prejudice** for failure to state a claim. Ziogas will be granted leave to amend his Complaint. He is reminded that his Amended Complaint should indicate each defendant's alleged involvement in his care and allege how the individual's actions amount to deliberate indifference.

### Pending Motions

As to his request for counsel (Doc. 3), Ziogas indicates that he has contacted several law firms which never responded to his requests. He also notes that he has some college education (*Id*. at p. 3). Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706

5

F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Further, Ziogas's filings have been easy to read and understand. The Court finds him capable of filing an Amended Complaint on his own. His motion for counsel is **DENIED**.

## Disposition

For the reasons stated above, Ziogas's Complaint is **DISMISSED without prejudice**. He is **GRANTED** leave to file a "First Amended Complaint" on or before **September 11, 2023**. Should he fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. Fed. R. App. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall count as one of Ziogas's three allotted "strikes" under 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Ziogas must re-file any exhibits he wishes the Court to

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Ziogas is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 8/14/2023**

                                         **/s/ Mark A. Beatty**
                                         **MARK A. BEATTY**
                                         **United States Magistrate Judge**