IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BENJAMIN LEE ZIOGAS,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**DANIEL CONN, CHERI LAURENT, ROB JEFFREYS, ANTHONY WILLS, and ANGELA CRAIN,**<br><br>    **Defendants.** | Case No. 23-cv-756-MAB |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Benjamin Ziogas, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Ziogas's original Complaint, which alleged deliberate indifference in the treatment of a ruptured ulcer, was dismissed without prejudice because he failed to identify any individual who was deliberately indifferent to his condition (Docs. 1, 16). In his Amended Complaint (Doc. 25), Ziogas again seeks to bring claims under the Eighth Amendment for the treatment of his ruptured ulcer.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon

1

which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

In his Amended Complaint, Ziogas makes the following allegations: While in segregation at Menard Correctional Center, Ziogas sought medical treatment for various symptoms including: abdominal pain, constipation, bright red blood and dark blood in his stool, and vomiting (Doc. 25, p. 5). On March 15, 2022, he spoke with Nurse Reva and asked to be seen by the healthcare unit. Nurse Reva put him on a waiting list to see the nurse practitioner, but Ziogas contends the waiting list at the time was months long (*Id.*). Nurse Reva provided him with Ibuprofen and a stomach acid reducer (*Id.*). On March 16 and 17 he sought emergency care from correctional officers John Doe #1 and John Doe #2, but they simply walked away from him (*Id.*).

On March 18, 2022, Ziogas was released from segregation and he asked correctional officer ("C/O") Eggers for assistance. Jane Doe Nurse #1 stopped by his cell during the medication line and Ziogas informed her of his symptoms. She indicated that someone would check on him, but no one ever came back during the morning shift. At the start of second shift, around 3:00 p.m., he requested emergency medical care from John Doe #3 with no success. Later that evening he requested medical attention from Jane Doe Nurse #2, but she did not stop at his cell. He also asked John Doe #4 for medical attention. On March 19, 2022, at 2:00 a.m., he sent an email to a relative asking her to contact the prison about his need for medical care (*Id.* at p. 6).

On March 19, 2022, at 7:00 a.m., Ziogas again spoke with C/O Eggers about his need for medical attention. C/O Eggers informed him that he was aware of his need. Three hours later, Jane Doe Nurse #3 stopped by his cell and evaluated him. At the time of her evaluation, Ziogas's symptoms included: severe abdominal pain, vomiting, trouble breathing, bloated abdomen, rapid heart rate, low grade fever, and unable to drink or eat (*Id.* at p. 6). She immediately had him evaluated by a nurse practitioner who directed that he be transferred to the hospital. He was diagnosed with a ruptured ulcer in his small intestine and had emergency surgery (*Id.*).

Ziogas complains that the medical care at Menard is "sub-standard" and not the same as he would receive outside of the prison. There are long waits for appointments and certain treatments are not available at the prison. He believes policy holders and medical professionals know about this level of care but treat inmates with less medical attention than a person outside of the prison (*Id.* at pp. 6-7). Ziogas also alleges that he should not have been in segregation because he was later found innocent of the charge, and the charge was based on prejudice (*Id.* at p. 7).

He alleges that Daniel Conn and Cheri Laurent, as president and vice president of Wexford Health Sources, Inc., are in charge of all medical care and oversee the operations at the prison. He believes they are responsible for the sub-standard care at Menard because they signed the contracts (*Id.* at p. 8). He also identifies Rob Jeffreys, who was the director of IDOC at the time of his medical event, alleging that he signed the contract between Wexford and is liable "if the policies/protocols that concern handling of medical emergencies to inmates violated [Ziogas's] rights" (*Id.* at p. 8). He further alleges Anthony

3

Wills oversees all the employees and healthcare at Menard and Angela Crain is aware of how inmates are treated at Menard. Ziogas alleges Crain is aware of long waiting periods and she responded to his grievances. Ziogas alleges that he wrote a grievance about his medical diet because the meals were horrible and he was unable to eat them (*Id*. at p. 9). Anthony Wills and Angela Crain denied those grievances. He remained on the diet from April 2022 to February 2023 and believes that Crain and Wills, in responding to his grievance, could have changed his diet.

## **Discussion**

Simply put, Ziogas again fails to state a claim. Ziogas again lists only Wexford and IDOC officials who did not play any role in the care provided to him for his ruptured ulcer. He alleges that these officials signed contracts and were over the employees and healthcare provided at the prison, but that is not enough to state a claim. As previously stated with Ziogas's original Complaint, there is no indication that any of the named defendants knew about his condition or should have known. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (The relevant inquiry is whether defendants "actually knew about [Plaintiff's] condition…"). Further, these officials cannot be held liable simply as high-ranking officials who oversee employees because supervisory liability does not apply to actions under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Nor can they be responsible for simply denying grievances. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Thus, any claim against Daniel Conn, Cheri

4

Laurent, Rob Jeffreys, Anthony Wills, and Angela Crain is **DISMISSED without prejudce**.

Ziogas does identify a number of individuals in his statement of claim that he alleges he requested care from and who either ignored him or failed to provide him with proper care. This includes John Doe Correctional Officers #'s 1-4, Nurse Reva, and Jane Doe Nurses #'s 1-2. But Ziogas fails to identify these individuals in the case caption, nor does he include them in his list of defendants (Doc. 25, pp. 1-2). He merely states in his statement of claim that he wrote "*et. al*" in the caption of the case because there was more than one defendant and it is too soon to determine who those additional defendants may be. But to the extent Ziogas intends to bring a claim for deliberate indifference against these individuals, he has failed to identify them as defendants. The Court will not treat parties not listed in the caption as defendants; thus, any claim against them is **DISMISSED without prejudice**. *See Myles v. United States,* 416 F.3d 551, 551-52 (7th Cir. 2005) (to be properly considered a party, a defendant must be "specif[ied] in the caption").

For the reasons stated, Ziogas's Amended Complaint (Doc. 2) is **DISMISSED**. Because it appears that Ziogas may be trying to bring claims against correctional officers and nurses who he sought care from, but who he failed to identify as defendants, the Court will **GRANT** Ziogas *one more opportunity* to state a viable claim(s). Ziogas is reminded that he should identify the individuals in the case caption and as defendants in his amended pleading. To aid Ziogas in drafting an amended pleading, the Clerk is **DIRECTED** to send Ziogas a Section 1983 Complaint form.

**Preliminary Injunction Motion**

Prior to filing his Amended Complaint, Ziogas filed a motion for emergency injunctive relief, requesting an appointment with a gastrointestinal ("G.I.") specialist (Doc. 19). Because Ziogas had not yet submitted his Amended Complaint and his motion failed to provide any basis for the need for an emergency evaluation, the Court took the matter under advisement until Ziogas filed his Amended Complaint. But now the Court finds that Ziogas is not entitled to injunctive relief. His Amended Complaint is devoid of any allegations as to his current state of his condition or care. There is no indication in the Amended Complaint that he is currently being treated with deliberate indifference nor has he informed the Court on the care, or lack thereof, that he has currently received. Because Ziogas's Amended Complaint was dismissed for failure to state a claim and he fails to provide any allegations which suggest he is currently being treated with deliberate indifference, the Court now **DENIES** Ziogas's preliminary injunction motion (Doc. 19).

**Other Pending Motions**

With his Amended Complaint, Ziogas also filed a motion for counsel (Doc. 26) and motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 27). Ziogas has already paid his full filing fee making his motion to proceed IFP **MOOT**. As to his request for counsel, the Court finds Ziogas's filings have been easy to understand. Further, the Court finds him capable of stating a viable amended pleading on his own. Thus, his request for counsel (Doc. 26) is **DENIED** at this time.

**Disposition**

For the reasons stated above, Ziogas's Amended Complaint is **DISMISSED without prejudice**. He is **GRANTED** leave to file a "Second Amended Complaint" on or before **November 3, 2023**. Should he fail to file his Second Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. Fed. R. App. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). The dismissal shall count as one of Ziogas's three allotted "strikes" under 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the Second Amended Complaint must stand on its own, without reference to any previous pleading, and Ziogas must re-file any exhibits he wishes the Court to consider along with the Second Amended Complaint. The Second Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Ziogas is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with

7

this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 10/6/2023**

**/s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**
