### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BENJAMIN LEE ZIOGAS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-CV-756-MAB |
| | ) | |
| DANIEL CONN, CHERI LAURENT, | ) | |
| ROB JEFFREYS, ANTHONY WILLS, | ) | |
| ANGELA CRAIN, JOHN DOE #'s 1-6, | ) | |
| and JANE DOE #2, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Benjamin Ziogas, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is now before the Court on Ziogas's Second Amended Complaint (Doc. 31). His original Complaint (Doc. 1) and his First Amended Complaint (Doc. 25), both alleging Eighth Amendment claims related to the treatment of a ruptured ulcer, were dismissed without prejudice (Docs. 16, 30). In the Second Amended Complaint, Ziogas again alleges that the Defendants were deliberately indifferent in the treatment of a ruptured ulcer in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a).

1

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Second Amended Complaint

In his Second Amended Complaint, Ziogas makes the following allegations: While housed in segregation, Ziogas developed symptoms of abdominal pain, constipation, red and dark blood in his stool, and vomiting (Doc. 31, p. 8). He submitted several nurse sick call requests. On March 15, 2022, he saw Nurse Reva during a nurse sick call. She informed Ziogas that he was on a waiting list to be seen by a nurse practitioner, but the list was months long (*Id*.). Nurse Reva provided him with ibuprofen and acid reducers, but those did not alleviate his symptoms (*Id*.). Ziogas alleges that the scheduling official and the healthcare unit administrator were aware of his need for care but failed to place him on a list for urgent care (*Id*.). On March 16, 2022, Ziogas's symptoms worsened. He asked John Doe #3 correctional officer for treatment, but the officer walked away (*Id*.). Ziogas submitted additional requests for medical care.

On March 18, 2022, Ziogas was released from segregation. He requested medical attention from Correctional Officer Eggers. In response, Jane Doe Nurse #1 stopped by his cell and Ziogas informed the nurse of his symptoms. She said she would check on him later, but she failed to follow-up with his concerns. At the start of second shift, at approximately 3:00 p.m., Ziogas spoke to John Doe #5 correctional officer and again requested medical care (*Id*.). Ziogas alleges the correctional officer did not provide a definitive answer to his request (*Id*.). During medication rounds that evening, at

approximately 9:00 p.m., Ziogas asked Jane Doe Nurse #2 for medical attention (*Id.*). She ignored him and kept walking down the gallery (*Id.*). At approximately 11:00 p.m., he spoke with John Doe #6 correctional officer who listened to Ziogas's complaints and then walked away (*Id.* at p. 9).

On March 19, 2022 at 2:00 a.m., Ziogas sent an email through his personal tablet to a relative. He asked the relative to relay his request for medical care to the prison (*Id.* at p. 9). At 7:00 a.m., he again spoke to Correctional Officer Eggers (*Id.*). Three hours later, Jane Doe #3 stopped by Ziogas's cell to examine him. Ziogas described his symptoms which included: severe abdominal pain, vomiting, unable to drink or eat, trouble breathing, a bloated abdomen, rapid heart rate, and fever (*Id.*). Jane Doe #3 immediately referred him to a nurse practitioner who also examined him and referred him to an outside hospital (*Id.*). Ziogas was transported to a local hospital where he was diagnosed with a ruptured ulcer in his small intestine (*Id.* at pp. 8-9). He had emergency surgery to correct the rupture (*Id.*).

Ziogas attributes the delay in obtaining care for his ruptured ulcer to issues with the prison's healthcare unit (*Id.* at p. 9-10). He alleges that there are long wait times and a backlog of referrals to specialists (*Id.*). He was initially placed on a month's long waitlist to see a nurse practitioner. He alleges that when he was first put on the nurse practitioner list, it was based on a first come basis and did not take into account the serious nature of his symptoms (*Id.*). He alleges that the IDOC director, the warden, and the healthcare unit administrator were aware of the issues with wait times to see medical staff at Menard due to staff shortages (*Id.*).

Ziogas also alleges the warden and healthcare unit administrator were aware of delays in care because the prison utilized the same gastrointestinal specialist for all of the inmates at Menard. He alleges the prison purposefully used one specialist, rather than multiple specialists, causing delays (*Id.*). He also alleges that delays may be caused by Menard's decision to sometimes use two vehicles for transporting inmates to medical appointments when another institution might use more vehicles (*Id.* at p. 11). Ziogas alleges that he has been unable to see a specialist for his ulcer and has been waiting eight months (*Id.*). He also alleges that he lacks access to unspecified medications (*Id.*).

Ziogas also alleges that the president and vice president of Wexford Health Sources are aware of the contracts between Wexford and IDOC. Specifically, they are aware of the way healthcare is structured in the contract and the ways in which the contract causes delays (*Id.* at p. 12). He contends that these officials should be aware given their level of education and input provided by their attorneys, who Ziogas identifies as potential defendants (*Id.*). Zioaga also claims that Rob Jeffreys, the director at the time of his surgery, the warden, and the healthcare unit administrator were aware of issues with the healthcare at Menard due to the contracts in place regarding the level of healthcare provided to inmates (*Id.*). He says that the warden and healthcare unit administrator should have been aware of the subpar medical care he received due to his numerous sick call requests, grievances, and telephone calls from relatives (*Id.*). Ziogas alleges that Wexford, IDOC's director, the warden, and the healthcare unit administrator are also aware of potential violations of his constitutional rights as it relates to his medical care due to annual reports, spreadsheets, and financials reports/graphs (*Id.* at p. 13).

4

Ziogas provides additional examples of the poor healthcare provided at Menard. According to Ziogas, he needs dental implants for missing teeth, but implants are not an option for inmates at Menard (*Id.* at p. 13). He also suffers from arthritis and degenerative disc disease and has requested a joint supplement to no avail (*Id.*). He has requested other supplements which he alleges are unavailable to him because they are not part of the contract between IDOC and Wexford (*Id.*). Ziogas mentions additional issues with his diet, alleging he was stuck on a medical diet despite requests for a regular diet (*Id.* at p. 12). He alleges both the warden and healthcare unit administrator are at fault for his placement on the wrong diet (*Id.*). Ziogas also contends that all of issues with healthcare at Menard are the result of attempts to cut costs and that he was placed on a long waitlist for the nurse practitioner in an attempt to cut costs (*Id.* at p. 13).

## Discussion

Based on the allegations in the Second Amended Complaint, the Court designates the following count:

> **Count 1:** **Eighth Amendment deliberate indifference claim against Daniel Conn, Cheri Laurent, Rob Jeffreys, Anthony Wills, Angela Crain, John Doe #1, John Doe #2, John Doe #3, John Doe #5, John Doe #6, and Jane Doe #2 for failing to obtain Ziogas prompt treatment for his ruptured ulcer.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order**

**should be considered dismissed without prejudice as inadequately pled under the** *Twombly* **pleading standard**.[1]

At this stage, Ziogas states a claim against correctional officers John Doe #3, John Doe #5, and John Doe # #6, as well as Jane Doe Nurse #2. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment). He specifically alleges that he spoke to these individuals and requested care for his symptoms, but these individuals ignored his requests. Accordingly, Ziogas has sufficiently alleged that these individuals acted with deliberate indifference to his need for medical care.[2]

However, Ziogas has failed to state a claim with respect to Daniel Conn, Cheri Laurent, Rob Jeffreys, Anthony Wills, Angela Crain, and John Doe #'s 1-2. Ziogas alleges that Daniel Conn (as acting president of Wexford), Cheri Laurent (as acting vice president of Wexford), and Wexford attorneys John Doe #'s 1-2 oversaw all operations of Wexford and were aware of the contracts between Wexford and IDOC. As high-ranking officials, they were aware of the level of care provided to inmates at IDOC through the implementation of the contract. According to Ziogas, these individuals were aware of the overall services provided to prisoners and the specific care that is not provided to

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

[2] Ziogas also refers to a Jane Doe Nurse #1 who he spoke to about his symptoms. She allegedly said she would check on him later but failed to do so. But Ziogas fails to mention her in the caption of his Second Amended Complaint. Thus, any potential claim against Jane Doe #1 is **DISMISSED without prejudice**. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (parties must be specified in the case caption to be considered a party). He further identifies a John Doe #4 in the caption of his Complaint but fails to include any allegations against him in his statement of claim. Thus, any claim against John Doe #4 is also **DISMISSED without prejudice**.

prisoners pursuant to the contract. But these high-ranking officials cannot be liable for the actions of their employees because *respondeat superior*, or supervisor, liability does not apply to Section 1983 actions. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). And Ziogas fails to allege that these officials were *specifically* aware of the level of care provided that he received or the delays he experienced in obtaining care. *See, e.g.*, *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about [Plaintiff's] condition, not whether a reasonable official should have known."). Thus, any potential claims against these Wexford officials are **DISMISSED without prejudice**.

Ziogas fails to label Wexford itself as a defendant in his case caption. *Myles*, 416 F.3d at 551–52. But even if he did, he may only proceed on a claim against Wexford if its policies and practices led to the deliberate indifference Ziogas experienced. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation). Ziogas fails to point to any specific Wexford policy that led to his delay in care. He argues that the contract "dumbs down" healthcare for inmates but fails to point to a specific policy or practice from that contract. He does mention, in conclusory fashion, that there were cost-cutting policies at Menard, but he fails to allege how those policies affected his care. He also notes that medical testing is delayed or denied, but then acknowledges that he received an abdominal x-ray (Doc. 31, p. 15). There are simply no allegations to suggest that the delay in his care was caused by a Wexford policy or practice. Thus, any claim against Wexford is **DISMISSED without prejudice**.

Similarly, Ziogas alleges that Rob Jeffreys (as acting director), warden Anthony Wills, and Angela Crain (the healthcare unit administrator) are aware of Wexford contracts and aware of the way healthcare is administered to inmates at Menard. He alleges they know of policies and contracts which allow for subpar healthcare. He also alleges that they were aware of his needs for care due to his complaints, grievances, and because he is "in the limelight" (*Id*. at p. 17). But these officials cannot be liable simply as high-ranking officials at IDOC. Nor can they be liable for simply responding to his grievances. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (stating that "the alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). There are no facts which allege that these officials were specifically aware of Ziogas's need for care. Although he alleges that he contacted family members about his need for care, he fails to allege that family members specifically spoke to Jeffreys, Wills, or Crain. Nor are there any allegations as to what policies or protocols these officials implemented which led to delays in Ziogas's care. Thus, the claim against Jeffreys, Wills, and Crain is also **DISMISSED without prejudice**. Anthony Wills, as warden of Menard, will remain in the case in his official capacity only, in order to respond to discovery aimed at identifying the John/Jane Does. Once Wills has entered his appearance, the Court will enter a scheduling order setting forth additional guidelines for identifying the unknown defendants.

Finally, Ziogas generally refers to other issues with his healthcare at Menard, beyond his ruptured ulcer. He mentions a need for dental implants, issues with his diet, and a need for dietary supplements/medications to help with his arthritis. But Ziogas

fails to connect these issues with a specific defendant. He fails to point to a specific individual who denied him care for these issues. Nor has he provided any additional information about when he sought care or from whom. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (noting that a successful complaint generally alleges "the who, what, when, where, and how…"). He alleges that Crain and Wills should have been aware of his diet issues through grievances, but again, the simple denying of a grievance is not sufficient to state a claim. These issues also appear to be unrelated to Ziogas's claim regarding the treatment of his ruptured ulcer. To the extent that he wants to pursue any of these additional, unrelated claims he must file a new lawsuit after first exhausting his administrative remedies.

### Motion for Counsel

As to Ziogas's motion for counsel (Doc. 32), he alleges that he wrote to several firms and had relatives contact attorneys to no avail. But given the early stage of the litigation, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[3] Further, counsel is not needed at this time because Defendants have not filed an Answer nor is there anything pending that would require the assistance of counsel. Thus, Ziogas's motion for counsel (Doc. 32) is **DENIED**.

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

**Motion for Immediate Doctor Visit**

Ziogas recently submitted a motion labeled "Motion for Immediate Doctor Visit, Motion for Court Ordered Transfer" (Doc. 39). Ziogas alleges that he needs pain medication for a prior back injury and a change in his diet. He alleges that he suffered a back injury in November 2023 and is still experiencing the effects of that injury. Ziogas acknowledges that he saw a nurse practitioner on February 8, 2024 and was prescribed medications. The nurse practitioner also ordered an x-ray and CT scan (Doc. 39, p. 1). He received an x-ray on February 28, 2024 (*Id.*). But Ziogas complains that his pain medication has been reduced by half of his original prescription. As a result, he alleges that he has experienced more migraines and discomfort.

In addition to the issues with his medication, Ziogas alleges an issue with his diet tray. On February 18, 2024, he started receiving a high fiber diet tray despite not being prescribed a high fiber diet. The high fiber diet tray is often different than the regular diet tray and the increased fiber causes Ziogas gastrointestinal issues (*Id.* at pp. 2-4).

To remedy these issues, Ziogas requests a Court order directing Menard to schedule Ziogas for an appointment with a doctor or nurse practitioner. He also seeks a transfer from Menard because he believes it is a conflict of interest to be housed at the same facility with officials who are named in his lawsuit (*Id.* at p. 4).

Ziogas's motion for injunctive relief is unrelated to the claims in this lawsuit. Ziogas's Second Amended Complaint focuses on treatment he received for a ruptured ulcer. The Court previously noted that despite Ziogas mentioning his diet in his Second Amended Complaint, the claim was unrelated to those regarding his ruptured ulcer.

10

Further, his allegations regarding access to pain medications for his back and migraines are also unrelated to the claims in this lawsuit. To the extent that Ziogas seeks to bring a claim against officials for issues with his diet or access to pain medications, he would need to file a new lawsuit after first exhausting his administrative remedies. To the extent Ziogas seeks injunctive relief in this case for these unrelated claims, his motion for immediate doctor visit and transfer (Doc. 39) is **DENIED**.

## Disposition

For the reasons stated above, Count 1 shall proceed against John Doe #3, John Doe #5, and John Doe # #6, as well as Jane Doe Nurse #2. Anthony Wills will also remain in the case (in his official capacity only) to respond to discovery aimed at identifying the unknown defendants. Daniel Conn, Cheri Laurent, Rob Jeffreys, Anthony Wills (individual capacity), Angela Crain, John Doe #1, John Doe #2, John Doe #4, and Jane Doe Nurse #1 are **DIMSISSED without prejudice**.

The Clerk of Court shall prepare for Defendant Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Ziogas. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Ziogas, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**. Anthony Wills need not file an Answer as he is only in the case to help identify the unknown defendants. Once counsel for Wills enters their appearance, the Court will enter a scheduling order for discovery related to the unknown defendants.

If judgment is rendered against Ziogas, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Ziogas is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result

in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 3/11/2024**

**/s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of

your lawsuit and serve them with a copy of your Second Amended Complaint. After

service has been achieved, the defendants will enter their appearance and file an Answer

to your Second Amended Complaint. It will likely take at least **60 days** from the date of

this Order to receive the defendants' Answer, but it is entirely possible that it will take **90**

**days** or more. When all the defendants have filed Answers, the Court will enter a

Scheduling Order containing important information on deadlines, discovery, and

procedures. Plaintiff is advised to wait until counsel has appeared for the defendants

before filing any motions, to give the defendants notice and an opportunity to respond to

those motions. Motions filed before defendants' counsel has filed an appearance will

generally be denied as premature. **Plaintiff need not submit any evidence to the Court**

**at this time, unless specifically directed to do so.**