IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BENJAMIN LEE ZIOAGAS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-CV-756-MAB |
| | ) |
| DANIEL CONN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is before the Court on Plaintiff Benjamin Lee Ziogas' Motion for Leave to Amend Complaint (Doc. 134), Defendant Michelle Carbaugh's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 139), Defendants Seth Quertermous and Zechariah Perroquet's Motion for Summary Judgment on the Issue of Exhaustion (Doc. 146), and several supplemental motions related to those three motions (Docs. 152, 153, 158, 159). For the reasons set forth below, Plaintiff's Motion for Leave to Amend Complaint is **GRANTED in part** and **DENIED in part** (Doc. 134) and all other pending motions are **DENIED as MOOT** (Docs. 139, 146, 152, 153, 158, 159).

1. *Background and Procedural History*

Plaintiff filed this civil rights action in March 2023 for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff's original Complaint (Doc. 1) and his First Amended Complaint (Doc. 25) were both dismissed without prejudice (*see* Docs. 16, 30), such that this action is currently proceeding upon Plaintiff's Second Amended Complaint (Doc. 31).

Plaintiff's Second Amended Complaint alleges that Defendants were deliberately indifferent in treating his ruptured ulcer (*Id.*; *see also* Doc. 40).[1] More specifically, Plaintiff's Second Amended Complaint alleges that Plaintiff began experiencing abdominal pain, constipation, blood in his stools, and vomiting while housed in segregation at Menard Correctional Center in March 2022 (Doc. 40, p. 2). Plaintiff submitted numerous sick call requests and saw Nurse Reva on March 15, 2022 (*Id.*). She informed Plaintiff that he was on a waiting list to be seen by a nurse practitioner, but the waitlist was months long (*Id.*). Plaintiff alleges his symptoms worsened over the next day and he asked Defendant Quertermous for treatment, but Defendant Quertermous walked away without assisting him (*Id.*; *see also* Doc. 92).[2]

Plaintiff was released from segregation on March 18, 2022, and requested medical attention from another correctional officer (Doc. 40, p. 2). In response, Jane Doe Nurse #1 stopped by Plaintiff's cell and was informed by Plaintiff of his symptoms (*Id.*). That nurse indicated she would come back later, but she failed to do so (*Id.*). Thereafter, at approximately 3:00 p.m., Plaintiff spoke with a correctional officer, John Doe #5, and requested medical care (*Id.*). However, that correctional officer did not provide Plaintiff with a definitive answer to his request for care (*Id.*).

---

[1] The Court's background summary will focus upon the allegations and parties that will be discussed throughout this Order. It does not discuss all the details or the entirety of Plaintiff's allegations. These additional details as to the entirety of Plaintiff's allegations are contained in Plaintiff's Second Amended Complaint (Doc. 31) and the corresponding Merit Review Order (Doc. 40).
[2] Defendant Quertermous was substituted for the John Doe #3 identified in Plaintiff's Second Amended Complaint on December 19, 2024 (Doc. 92).

Later that day, at approximately 9:00 p.m., Plaintiff asked for medical attention from Defendant Carbaugh, a nurse, as she was conducting medication rounds (*Id.* at pp. 2-3).[3] Defendant Carbaugh ignored Plaintiff's request for medical attention and continued down the gallery (*Id.* at p. 3). Approximately two hours later, Plaintiff spoke with Defendant Perroquet and again relayed his concerns (*Id.*).[4] Defendant Perroquet also failed to provide Plaintiff with assistance and instead walked away (*Id.*).

In the early morning on March 19, 2022, Plaintiff emailed a relative and asked them to contact Menard to relay his request for medical care (*Id.*). At approximately 10:00 a.m. that same morning, a Jane Doe #3 visited Plaintiff's cell to examine him (*Id.*). Plaintiff described his symptoms which included severe abdominal pain, vomiting, an inability to eat or drink, difficulty breathing, a bloated abdomen, a rapid heart rate, and fever (*Id.*). Jane Doe #3 immediately referred Plaintiff to a nurse practitioner, who examined him and referred him to an outside hospital (*Id.*). At the hospital, Plaintiff was diagnosed with a ruptured ulcer in his small intestine and underwent emergency surgery (*Id.*).

Plaintiff's Second Amended Complaint also raised numerous allegations against the prison healthcare system for the delay in his treatment (*Id.*). In summary, Plaintiff alleged Wexford Health Sources, Inc., the IDOC's Director, Menard's Warden, the

---

[3] Plaintiff's Second Amended Complaint initially listed Nurse Carbaugh as Jane Doe Nurse #2 (*see* Doc. 31 at p. 8). Nurse Pstorisca was then substituted for Jane Doe Nurse #2 in January 2025 (Doc. 95). However, Plaintiff subsequently learned that Jane Doe Nurse #2 was Defendant Carbaugh and therefore, Plaintiff ultimately substituted Defendant Carbaugh for Nurse Pstorisca in March 2025 (Doc. 109).
[4] Defendant Perroquet was substituted for the John Doe #6 identified in Plaintiff's Second Amended Complaint on July 25, 2024 (Doc. 68).

Healthcare Unit Administrator, and Wexford's President and Vice President, were all aware of the harm caused by the healthcare system's inadequacies (*Id.* at pp. 3-5).

The Court conducted a preliminary review of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915A in March 2024 (Doc. 40). That Merit Review Order permitted Plaintiff to proceed on the following claim:

> Count 1: Eighth Amendment deliberate indifference claim against John Doe #3 [Quertermous], John Doe #5, John Doe #6 [Perroquet], and Jane Doe Nurse #2 [Carbaugh] for failing to obtain Ziogas prompt treatment for his ruptured ulcer.

(Doc. 40 at pp. 5-9). Conversely, the Court's Merit Review Order dismissed Daniel Conn, Cheri Laurent, Robb Jeffreys, Anthony Wills, Angela Crain, John Doe #1, and John Doe #2 without prejudice due to Plaintiff's failure to state a claim against those individuals (*Id.*). Similarly, the Court dismissed Jane Doe #1 and John Doe #4 without prejudice due to Plaintiff's failure to include any allegations against those individuals (*Id.* at p. 6, fn. 2). In addition, the Court dismissed Wexford without prejudice because Plaintiff neither listed Wexford as a Defendant in his case caption nor included sufficient allegations to raise a claim against Wexford (*Id.* at p. 7). Finally, to the extent Plaintiff sought to raise challenges against other aspects of care at Menard, the Court found those allegations were unrelated and failed to state a claim (*Id.* at pp. 8-9).

Thereafter, as discussed in footnotes 2-4, Plaintiff ultimately identified and substituted: (1) Defendant Quertermous for John Doe #3, (2) Defendant Perroquet for John Doe #6, and (3) Defendant Carbaugh for Jane Doe Nurse #2 (*see* Doc. 109). However, the Court dismissed John Doe #5 without prejudice because Plaintiff failed to identify

that unknown Defendant by April 1, 2025, as ordered (*see* Doc. 126; *see also* Doc. 109 at pp. 2-3).

Consequently, the Court entered an Initial Scheduling Order on April 10, 2025, which set a deadline of June 6, 2025, for Plaintiff to file a motion to amend, and a deadline of July 11, 2025, for Defendants to file any exhaustion-based dispositive motions. Plaintiff timely filed the instant Motion for Leave to Amend Complaint on June 3, 2025 (Doc. 134). Notably, Plaintiff's Motion for Leave to Amend Complaint also included attachments containing his Proposed Third Amended Complaint (Doc. 134-1) and a memorandum of law in support of his motions (Doc. 134-2). Defendants did not file a response in opposition to Plaintiff's motion.

Meanwhile, on July 10, 2025, Defendant Carbaugh timely filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 139). Plaintiff filed a response in opposition on July 24, 2025 (Doc. 145), and Defendant Carbaugh filed a reply in support less than two weeks later (Doc. 147). Meanwhile, after being granted an extension of time (*see* Doc. 142), Defendants Perroquet and Quertermous timely filed their Motion for Summary Judgment on the Issue of Exhaustion (Doc. 146).

Pertinently, when granting Plaintiff's motion for extension of time to respond to Defendants Perroquet and Quertermous' motion, the Court also observed that neither of Defendants' summary judgment motions included a Rule 56 summary judgment notice (*see* Doc. 149). As a result, the Court provided Plaintiff with an appropriate Rule 56 Notice and granted Plaintiff an extended period of time to respond to Defendants Perroquet and Quertermous' motion (*Id.*). The Court also considered Plaintiff's response to Defendant

Carbaugh's motion and found that it substantially complied with Rule 56 and SDIL Local Rule 56.1 (*Id.*). Nevertheless, out of an abundance of caution, the Court allowed Plaintiff to request leave to amend his Response to Defendant Carbaugh's motion if he believed he was prejudiced by the lack of notice (*Id.*).

On August 26, 2025, Plaintiff filed a Motion for Leave to File Amended Response to Defendant Carbaugh's Motion (Doc. 153). On that same day, Plaintiff filed a motion seeking a status update and an extension of time to file a response to Defendants Perroquet and Quertermous' motion (Doc. 152). On September 3, 2025, Plaintiff filed a response to Defendants Perroquet and Quertermous' motion (Doc. 157). Several days later, Plaintiff filed a motion that sought to withdraw his prior request for an extension of time (Doc. 158). Finally, on September 17, 2025, Defendants Perroquet and Quertermous moved for an extension of time to file a reply in support of their exhaustion-based summary judgment motion (Doc. 159).

2. *Plaintiff's Motion for Leave to Amend Complaint (Doc. 134)*

   a. *Standards for Leave to Amend and Rule 15*

Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires." In interpreting Rule 15(a), the Supreme Court of the United States has explained that Rule 15(a)'s "mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, district courts can deny leave to amend without abusing their discretion "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the **amendment would be futile**[.]" *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)

(emphasis added). "In the Seventh Circuit, dismissals under Fed. R. P. 12(b)(6) and § 1915A share the same standard" and "[a] Court may deny a motion to amend where it would not survive a motion to dismiss." *Butler v. Anthony*, 13-CV-01285-MJR-SCW, 2014 WL 13133659, at *1 (S.D. Ill. Sept. 25, 2014).

Additionally, when it comes to complaints filed by *pro se* litigants, "district courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Kiebala v. Boris*, 928 F.3d 680, 684 (7th Cir. 2019) (quoting *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996)). *See also Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) ("[T]he Supreme Court reaffirmed that '[a] document filed *pro se* is to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). "The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (citation omitted).

   b. <u>*Analysis of Plaintiff's Motion for Leave to Amend Complaint (Doc. 134)*</u>

Plaintiff seeks leave to file his Proposed Third Amended Complaint so he may: (1) raise a claim against Wexford, (2) raise a claim against Correctional Officer Harris, and (3) re-assert claims against Correctional Officer John Doe #5, IDOC Director Rob Jeffreys, Warden Anthony Wills, and Health Care Unit Administrator Angela Crain (*see* Doc. 134). Plaintiff also avers that he should be permitted to file his Proposed Third Amended

Complaint so he may raise allegations pertaining to newly discovered evidence of esophageal erosion (*Id.* at p. 1).

The Court has identified several reasons to grant Plaintiff's Motion for Leave to Amend Complaint (Doc. 134). First, Rule 15(a) and the Supreme Court both direct this Court to freely grant leave to amend absent reasons to the contrary. *See Foman*, 371 U.S. at 182. Second, Plaintiff's Motion for Leave to Amend Complaint was timely filed, and Defendants did not file a response in opposition (*see* Docs. 127, 134.). Third, Plaintiff's motion was made early in the course of proceedings, at a point where this Court has not yet resolved the issue of exhaustion of administrative remedies. Finally, as will be discussed at greater length below, two of the amendments contained in Plaintiff's Proposed Third Amended Complaint are not futile. For these reasons, Plaintiff will be permitted to file his Third Amended Complaint (*see* Doc. 134-1).

However, the Court's analysis does not end there as the new claims raised in Plaintiff's Third Amended Complaint are also subject to review under 28 U.S.C. § 1915A.[5] The Court addresses each proposed amendment in turn.

---

[5] Pursuant to Section 1915A, any portion of the Third Amended Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). Here, the Court has not conducted another round of preliminary review as to Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Quertermous, Perroquet, and Carbaugh because that claim was already reviewed in the Court's previous Merit Review Order (*see* Doc. 40). Furthermore, to the extent Plaintiff's Third Amended Complaint rewords portions of the Second Amended Complaint related to that claim and includes additional factual allegations, the Court has carefully reviewed those changes and finds they do not impact the Court's prior review as to the deliberate indifference claim against Defendants Quertermous, Perroquet, and Carbaugh.

### i. *Plaintiff's Proposed Monell Claim Against Wexford*

Plaintiff seeks leave to amend so he may reassert a claim against Wexford Health Sources, Inc. (*see* Doc. 134). Pertinently, Plaintiff's previous attempt to bring a claim against Wexford was dismissed because Plaintiff neither listed Wexford as a Defendant in his case caption nor included sufficient allegations to raise a claim against Wexford (Doc. 40 at p. 7). Plaintiff's Third Amended Complaint will be permitted to proceed because it corrects these deficiencies (*see generally* Doc. 134-1).

For one, unlike the Second Amended Complaint, Plaintiff's Third Amended Complaint specifically lists Wexford Health Sources, Inc., as a Defendant (*compare* Doc. 31 at p. 3 *with* Doc. 134-1 at p. 3). Accordingly, Plaintiff's Third Amended Complaint adequately identifies Wexford (*see* Doc. 40 at p. 7). *See Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) ("Naming and serving defendants is vital. How can one defend without first becoming a party?").

Moreover, Plaintiff's Third Amended Complaint also cures the deficiencies previously identified in his claim against Wexford (*Id.*). Namely, in the Court's prior Merit Review Order, the Court held that Plaintiff mentioned "in conclusory fashion, that there were cost cutting policies at Menard, but ***he fail[ed] to allege how those policies affected his care.***" (*Id.*) (emphasis added). Here, Plaintiff's Third Amended Complaint alleges that "Wexford knew that by cutting cost down in testing, diagnosis, and treatments by employing only a certain amount of time, regardless of the amount of patients waiting and needing treatment in those categories causes a delay in access to all medical services under those categories ***which caused suffering in my case, and violated***

*my rights.*" (Doc. 134-1 at p. 13) (emphasis added).[6] Therefore, Plaintiff's Third Amended Complaint sufficiently alleges that Wexford's policies and practices related to cost-cutting were the moving force behind the delay in Plaintiff receiving care and his resulting injury. *See Woodward v. Corr. Med. Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) ("With respect to CMS, we have stated that a corporate entity violates an inmate's constitutional rights if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners."); *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978) ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

For these reasons, Wexford will be added as a Defendant in this action and Plaintiff will be permitted to proceed upon a *Monell* claim against Wexford that is premised upon Wexford's alleged cost-cutting policies, customs, or practices. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021) ("In short, a *Monell* plaintiff must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation.").

---

[6] In comparison, Plaintiff's Second Amended Complaint contains a similar sentence which states, "Wexford knew that by cutting cost down in testing and diagnostic areas supplied by Wexford, and by employing and assigning a certain amount of personnel to work a certain amount of times causes a delay in access to all medical services under these categories." (Doc. 31 at p. 15). Thus, the allegations in Plaintiff's Third Amended Complaint differ from those in the Second Amended Complaint because Plaintiff now specifically alleges that the harm he suffered was caused by Wexford's cost-cutting policies.

### ii. *Amending Count 1 to Include Defendant Harris*

Plaintiff also seeks leave to file a Third Amended Complaint so he may add allegations against Correctional Officer Harris and name him as a Defendant in his Eighth Amendment deliberate indifference claim raised in Count 1. Here, the Court finds Plaintiff has raised sufficient allegations against Correctional Officer Harris to allow Plaintiff to add Harris to his deliberate indifference claim in Count 1.

Plaintiff's Third Amended Complaint alleges that he spoke to Harris at 8:00 p.m. on March 17, 2022 (Doc. 134-1 at p. 9). He states that Harris listened to his explanation of symptoms and "could see my suffering and knew that by protocol I required an evaluation by medical personnel, and yet walked away with no definite answer of options for healthcare treatment." (*Id.*). Thus, similar to Plaintiff's allegations against Defendants Perroquet, Quertermous, and Carbaugh, here Plaintiff specifically alleged that he spoke with Harris and sought care for his symptoms, but Harris ignored his requests (*see* Doc. 40 at p. 6). "Accordingly, Ziogas has sufficiently alleged that [Harris] acted with deliberate indifference to his need for medical care." (*Id.*). *See, e.g.*, *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016) ("A medical deliberate-indifference claim requires proof that the prisoner suffered from (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.").

Consequently, at this stage, Plaintiff's Third Amended Complaint sufficiently states a claim against Correctional Officer Harris for his alleged deliberate indifference.

### iii. *Plaintiff's Reasserted Claim Against John Doe #5*

The Court previously allowed Plaintiff to proceed against John Doe #5 based upon the allegations against that individual contained within the Second Amended Complaint (*see* Doc. 40 at p. 6). However, the Court later dismissed John Doe #5 without prejudice because Plaintiff failed to identify that individual by April 1, 2025, as previously ordered (*see* Doc. 126; *see also* Doc. 109 at pp. 2-3). In fact, in the Order setting a deadline to identify John Doe #5, the Court emphasized that Plaintiff had already reviewed photographs of potential correctional officers and was unable to identify John Doe #5 (Doc. 109 at p. 2). Consequently, when the Court dismissed John Doe #5 without prejudice, it was emphasized that Plaintiff had not identified any additional, relevant information which could lead to the identification of John Doe #5 (Doc. 126).

Crucially, nothing in Plaintiff's instant motion explains why he should be permitted to continue to pursue a claim against John Doe #5. Plaintiff is not seeking to amend his complaint to either bring a new claim against John Doe #5, nor is he seeking to amend his complaint to include additional factual allegations or details which could lead to John Doe #5's identification. Instead, Plaintiff merely seeks to reassert the same claim against John Doe #5 without providing any explanation as to why the parties should conduct another round of discovery related to the identification of John Doe #5. Quite simply, without any explanation as to why identification discovery may differ this

time around,[7] Plaintiff provides no basis to justify the Court reversing its prior Order dismissing John Doe #5 (*see* Doc. 126).

Again, the issue involving John Doe #5 was not that Plaintiff's Second Amended Complaint raised insufficient allegations against him, such that amending his complaint could cure those deficiencies. Rather, it was that discovery aimed at identifying John Doe #5 did not prove fruitful and Plaintiff provides no reason for believing things might be different were he permitted to raise the same claim against John Doe #5 and conduct an additional round of identification-based discovery. *See, e.g.*, *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint."). Accordingly, Plaintiff's Motion for Leave to Amend Complaint is DENIED insofar as it relates to John Doe #5.

### iv. *Plaintiff's Reasserted Claims Against Jeffreys, Wills, and Crain*

Plaintiff's Third Amended Complaint also seeks to name and reassert claims against IDOC Director Rob Jeffreys, the Warden of Menard – Anthony Wills, and Healthcare Unit Administrator - Angela Crain (*see* Docs. 134, 134-1). Ultimately,

---

[7] Admittedly, Plaintiff's Third Amended Complaint does state that the "name of John Doe #5 is not know[n], Menard is not a country club and inquiring about a person's name [is] not always a good idea in an environment such as this. Also I do not have the privileges of an attorney." (Doc. 134-1 at p. 14). However, irrespective of this acknowledgement, Plaintiff provides no explanation as to what might be different this time around to warrant further identification discovery.

Additionally, Plaintiff's Motion for Leave to Amend Complaint states "After extensive research, I have figured out all names of the appropriate parties." (Doc. 134 at p. 3). While it is difficult to square these two seemingly conflicting statements, what is most noteworthy is that Plaintiff has neither identified John Doe #5 in his Third Amended Complaint nor explained why additional identification discovery may prove fruitful.

Plaintiff's proposed amendments do not resolve any of the deficiencies related to these three individuals which were discussed in the Court's prior Merit Review Order (Doc. 40). As a result, Plaintiff's Third Amended Complaint fails to state a claim against IDOC Director Jeffreys, Warden Wills, and HCUA Crain.

The Court will not go to great lengths rehashing the same points addressed in the Courts prior Merit Review Order (*see* Doc. 40 at pp. 6-9). Put simply, the Court previously found that: (1) these individuals cannot be held accountable based solely upon their supervisory positions (*Id.* at p. 6); (2) they cannot be held liable simply for having reviewed Plaintiff's grievances (*Id.* at p. 8); and (3) Plaintiff failed to raise sufficient allegations as to their personal knowledge of his specific situation (*Id.* at p. 7). Significantly, nothing in Plaintiff's Third Amended Complaint overcomes these deficiencies.

It is true that Plaintiff's Third Amended Complaint alleges each of these individuals are at fault based upon their "individual participation and involvement." (Doc. 134-1 at pp. 25). However, Plaintiff's Third Amended Complaint provides no new allegations of what constituted that "individual participation." Rather, the Third Amended Complaint impermissibly relies upon the same allegations of those individuals' knowledge of inadequate staffing and medical care due to their knowledge of, or involvement with, the Wexford-IDOC contract and grievance review, and their supervisory roles (*Id.*). Thus, these claims fail for the same reasons as they did in the Court's prior Merit Review Order (*see* Doc. 40 at pp. 6-8).

Additionally, as it relates to Warden Wills and HCUA Crain, the Third Amended Complaint also alleges those two individuals were "aware of [Plaintiff's] case on a personal basis." (Doc. 134-1 at p. 25). However, to support these allegations, Plaintiff again impermissibly relies upon their role in reviewing his grievance filings (*see Id.*). Admittedly, Plaintiff attempts to recharacterize Wills and Crain's review of his grievances as more than mere a review because those two individuals allegedly held a briefing on one of his grievances (*Id.*). However, the Court does not find this line of reasoning to be persuasive because, as Plaintiff's own pleadings demonstrate, that alleged briefing occurred as part of the grievance review process and was being conducted by supervisory officials who did not treat Plaintiff (*see* Doc. 40 at pp. 6-8). *See also Robertson v. Walker*, 25-CV-00172-SPM, 2025 WL 2605842, at *6 (S.D. Ill. Sept. 9, 2025) ("Mere receipt of grievances from a prisoner is insufficient to establish that a prison warden was personally involved in any deficient medical care provided to the prisoner.").

Furthermore, to the extent Plaintiff seeks to amend his claims against these individuals to establish their liability based upon a widespread policy or practice, his arguments are equally unavailing. For example, Plaintiff discusses a policy of excessive lockdowns, yet he provides no allegations that he was harmed in this situation due to lockdowns preceding his surgery. Likewise, Plaintiff's amendments attempt to hold these three individuals accountable based upon the contract between Wexford and the IDOC, yet he provides no allegations that these individuals were responsible for the allegedly substandard care provided by Wexford. And if anything, the new claim Plaintiff has been

permitted to proceed upon against Wexford based upon Wexford's alleged policy of prioritizing cost-cutting over care undercuts any argument that individuals such as the Warden of Menard or the Director were responsible for those policies.

For all these reasons, the Court finds that Plaintiff's Third Amended Complaint fails to state a claim against Warden Wills, Director Jeffreys, and HCUA Crain. Consequently, Plaintiff's Motion for Leave to Amend Complaint is DENIED insofar as it seeks to raise a claim against those three individuals.

   c. *Conclusion as to Plaintiff's Motion for Leave to Amend Complaint*

In summary, Plaintiff is permitted to amend his Complaint to add Defendants Wexford Health Sources, Inc., and Correctional Officer Harris. Accordingly, this case will proceed on the following claims:

> **Count 1**: Eighth Amendment deliberate indifference claim against Seth Quertermous, Zechariah Perroquet, Michelle Carbaugh, and Correctional Officer Harris for failing to obtain Ziogas prompt treatment for his ruptured ulcer.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., for failing to provide Plaintiff with prompt and adequate treatment for his ruptured ulcer due to alleged cost-cutting policies or practices that resulted in understaffing and/or delayed treatment.

Defendants shall timely file an appropriate responsive pleading to the Third Amended Complaint and, pursuant to 42 U.S.C. § 1997e(g), shall not waive filing a reply. Pursuant to Administrative Order No. 244, Defendants need only respond to the issues

stated in the previous Merit Review Order (Doc. 40) and in this Order.[8] **In doing so, Defendants should rely upon the count designations provided above.**

### 3. *Additional Motions and Deadlines*

Defendants Carbaugh, Quertermous, and Perroquet have also filed two exhaustion-based motions for summary judgment that are currently pending before the Court (Docs. 139, 146). Ultimately, in light of the Court's above ruling allowing Plaintiff to file a Third Amended Complaint, Defendants' exhaustion-based motions are DENIED as MOOT (Docs. 139, 146). However, the Court's denials are without prejudice, meaning Defendants may file new or renewed exhaustion-based summary judgment motions after they have answered Plaintiff's Third Amended Complaint.

Thereafter, if Defendants' answer(s) assert the affirmative defense of failure to exhaust administrative remedies, Defendants' motion(s) for summary judgment on the issue of exhaustion are **due within sixty (60) days of filing their answer(s)** to the Third Amended Complaint.

Finally, in light of the Court's above rulings granting in part Plaintiff's Motion for Leave to Amend Complaint (Doc. 134) and denying as moot Defendants' exhaustion-based summary judgment motions (Docs. 139, 146), the Court DENIES as MOOT Plaintiff's Motion for Status and Extension of Time to File Response (Doc. 152); DENIES as MOOT Plaintiff's Motion for Leave to File Amended Response (Doc. 153); DENIES as

---

[8] Any other claim that is mentioned in the Third Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pleaded. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

MOOT Plaintiff's Motion for Status and Motion to Withdrawn Motion for Extension of Time (Doc. 158); and DENIES as MOOT Defendants' Motion for Extension of Time (Doc. 159).

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Leave to Amend Complaint is **GRANTED in part and DENIED in part** (Doc. 134); Defendant Carbaugh's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is **DENIED as MOOT** (Doc. 139), Defendants Quertermous and Perroquet's Motion for Summary Judgment on the Issue of Exhaustion is **DENIED as MOOT** (Doc. 146), and all other related motions are **DENIED as MOOT** (Docs. 152, 153, 158, 159).

The Clerk of Court is **DIRECTED** to re-file the Proposed Third Amended Complaint found at Doc. 134-1 on the docket as the operative, Third Amended Complaint**.** Additionally, the Clerk of Court is **DIRECTED** to prepare the following for Defendants Wexford Health Sources, Inc., and Correctional Officer Harris: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons), and to mail these forms, along with a copy of this Order and the Third Amended Complaint, to those Defendants in accordance with the service procedures outlined in the Court's previous Merit Review Order (Doc. 40 at pp. 11-12).

All Defendants, including Defendants Quertermous, Perroquet, and Carbaugh shall timely file an appropriate responsive pleading to the Third Amended Complaint and, pursuant to 42 U.S.C. § 1997e(g), shall not waive filing a reply. Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in the

original Merit Review Order (Doc. 40) and in this Order's merit review. **In doing so, Defendants should rely upon the count designations provided in this Order.**

In the event Defendants Carbaugh, Quertermous, and Perroquet reassert the affirmative defense of failure to exhaust administrative remedies, and/or Defendants Wexford or Harris assert the affirmative defense of failure to exhaust, Defendants' motion(s) for summary judgment on the issue of exhaustion are **due within sixty (60) days of filing their respective answer(s)** to the Third Amended Complaint.

Finally, Plaintiff is once again reminded of his continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 13, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
