IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BENJAMIN LEE ZIOGAS,**

**Plaintiff,**

**v.**

**SETH QUERTERMOUS, ZECHIRIAH PERROQUET, MICHELLE CARBAUGH, AUSTIN HARRIS, and WEXFORD HEALTH SOURCES, INC.,**

**Defendants.**

**Case No. 23-cv-756-NJR**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Benjamin Lee Ziogas, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while incarcerated at Menard Correctional Center.

This matter is currently before the Court on Defendant Michelle Carbaugh's motion for summary judgment for failure to exhaust administrative remedies (Doc. 172). Ziogas filed a response in opposition to the motion (Doc. 184), and Carbaugh filed a reply brief (Doc. 186).

## BACKGROUND

On March 1, 2023, Ziogas filed a Complaint alleging claims of deliberate indifference in treating his serious medical needs (Doc. 1). Ziogas was eventually allowed to proceed on a claim for deliberate indifference set forth in his Second Amended Complaint (Doc. 31, 40). As it relates to his claim against Carbaugh, Ziogas alleged that in March 2022, he developed abdominal pain, constipation, blood in his stool, and vomiting (Doc. 40, p. 2). He sought care

from numerous medical officials and correctional officers. On March 18, 2022, he sought care from Carbaugh during the evening medication rounds, but she ignored him (*Id.* at pp. 2-3). He was eventually seen by medical staff on March 19, 2022, transported to a local hospital, and diagnosed with a ruptured ulcer (*Id.* at p. 3). He underwent emergency surgery to correct the condition (*Id.*).

In response to the Second Amended Complaint, Defendant Carbaugh filed a motion for summary judgment for Ziogas's alleged failure to exhaust his administrative remedies before filing this lawsuit (Doc. 139). Ziogas also sought leave to file a Third Amended Complaint (Doc. 134). Magistrate Judge Mark Beatty granted the motion,[1] allowing Ziogas to proceed on the following claims:

> Count 1: Eighth Amendment deliberate indifference claim against Seth Quertermous, Zechariah Perroquet, Michelle Carbaugh, and Austin Harris for failing to obtain Ziogas prompt treatment for his ruptured ulcer.
>
> Count 2: Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., for failing to provide Ziogas with prompt and adequate treatment for his ruptured ulcer due to alleged cost-cutting policies or practices that resulted in understaffing and/or delayed treatment.

(Doc. 161, p. 16).[2]

In granting Ziogas's motion to amend, Magistrate Judge Beatty also denied the pending summary judgment motions on exhaustion as moot, noting that Defendants could

[1] The case was initially referred to Magistrate Judge Mark A. Beatty in light of Ziogas's consent to the full jurisdiction of a magistrate judge and per the Memoranda of Understanding between the Illinois Department of Corrections, the medical entities, and this Court (*See* Doc. 16, p. 1 n. 1).
[2] The allegations regarding Carbaugh's actions in response to Ziogas's request for care did not change from his Second Amended Complaint (Doc. 161, p. 3).

file new or renewed motions after answering Ziogas's Third Amended Complaint (*Id*. at p. 17).

On December 4, 2025, Defendant Carbaugh filed a new motion for summary judgment for failure to exhaust administrative remedies (Doc. 172). Carbaugh argues that Ziogas filed only one grievance related to his claims. On March 29, 2022, Ziogas submitted Grievance No. 63-9-22 (Doc. 172-1, pp. 41-42). The grievance stated that on March 19, 2022, Ziogas had emergency surgery for a ruptured ulcer (*Id*. at p. 41). Prior to surgery, Ziogas alleged he wrote medical requests several times and was seen a few times on sick call (*Id*.). Instead of being seen, Ziogas alleged he was placed on a waitlist that lasted months; he was also given ineffective medications (*Id*. at p. 42). He complained that the level of care he received was inadequate and he failed to receive treatment in a timely manner (*Id*.). Ziogas requested medical care equal to those individuals who were "free," requesting to be seen for any complaints within hours or, at most, days of a request (*Id*. at p. 41).

The grievance was received by the counselor on September 7, 2022, and sent to the healthcare unit for a response (Doc. 172-1, p. 41). On May 8, 2023, the healthcare unit administrator responded that she had already addressed Ziogas's issues in an earlier grievance, Grievance #162-12-22 (*Id*. at p. 43). She further noted that there was a backlog in the healthcare unit, and inmates were seen as quickly as possible (*Id*.). On May 15, 2023, the counselor returned the grievance to Ziogas.

On June 8, 2023, the grievance officer received the grievance (Doc. 172-1, p. 40). She also noted that the same issue had been addressed in the earlier filed emergency grievance (*Id*.). The grievance was deemed resolved (*Id*.). On October 12, 2023, Ziogas appealed the grievance to the Administrative Review Board ("ARB") and included a note indicating that

Grievance #162-12-22 did not involve the same issue despite the claims of the grievance officials at Menard (*Id*. at p. 39). Ziogas noted that Grievance #162-12-22 dealt with his current gastrointestinal issues, while Grievance #63-9-22 dealt with his ruptured ulcer in March 2022 (*Id*.). The ARB denied the grievance, noting that the issue had been appropriately addressed and Ziogas was currently scheduled for a medical writ (*Id*. at p. 38).

Carbaugh argues that this is the only grievance related to Ziogas's ruptured ulcer and does not include any specific allegations regarding the care he sought from her. She argues that Ziogas had the ability and opportunity to file a grievance regarding his interactions with her on March 18, 2022, but he failed to do so.

In his response, Ziogas sets forth a number of arguments regarding his ability to exhaust his claims. He alleges that the grievance process was futile because some of his grievances were never addressed (Doc. 183, p. 3). He notes that the prison disregarded its own deadlines for responding to his grievances and improperly delayed the grievance process, making it unavailable (*Id*.). Ziogas notes that he filed his grievance on March 29, 2022, but it took over six months for it to be documented and then another eight months for the counselor to respond to the grievance (*Id*.). He further notes that he submitted numerous grievances to identify the staff who denied him medical care, but staff at Menard used misconduct to prevent him from exhausting his remedies (*Id*. at p. 10). He also mentions threats and intimidations by staff (*Id*. at pp. 10-11). He notes that he only sought monetary damages, and the grievance process could not provide him with an available remedy (*Id*. at p. 4). Ziogas also argues that he had a life-threatening condition and could not exhaust his administrative remedies (*Id*. at pp. 12-13). He further argues that he has demonstrated

intertwinement of the merits of his claim with the issue of exhaustion, seeming to invoke the ruling in *Perttu v. Richards*, 605 U.S. 460 (2025) (*Id*. at p. 2).

Throughout his response, Ziogas refers to his response to Carbaugh's original motion for summary judgment (Doc. 151).[3] Although he does not specifically request that his original response be incorporated into his current brief, he refers to the response as if it is part of his current brief. In his original response, Ziogas maintained that he submitted two grievances, one regarding the identity of staff and one regarding the healthcare he received for his ulcer, but only one was returned (Doc. 151, p. 16). He argued that he ran out of room on his initial grievance, which required him to submit a second grievance (*Id*. at pp. 16, 26-27). He asked his counselor about the delays in receiving a response to Grievance No. 63-9-22, but he never received a response (*Id*. at pp. 16-17). He later argued that he filed five grievances within 60 days of his transfer to the hospital (*Id*. at p. 17). In one of the grievances, he referred to a nurse and provided her physical description (*Id*. at p. 19). In his attached statement of facts and accompanying affidavit, Ziogas argued that on he filed three grievances on March 29, 2022 (*Id*. at p. 21, 25). He submitted a grievance about the delays in his care, a grievance about the identities of staff who denied his requests for care, and a grievance about his missing television (*Id*. at pp. 21, 27). On April 15, 2022, he wrote to the grievance office about the status of his grievances, and he refiled all three grievances five days later (*Id*. at p. 21). On May 4,

[3] His brief in response to Carbaugh's current motion for summary judgment appears to be a copy of his memorandum of law in response to Carbaugh's previous motion (Doc. 151, pp. 1-14). But his current briefing fails to include a response to Carbaugh's statement of facts and Ziogas's statement of additional material facts. Those documents are only found in Ziogas's original brief (Doc. 151). Ziogas also has an earlier filed motion to deny summary judgment but was given leave to amend his response (Docs. 147, 149).

2022, he submitted two additional grievances about the denial of his care and the identities of staff involved in his care (*Id.*).

After submitting the grievances numerous times, Ziogas contends that he inquired about the status of the grievances. On June 20, 2022, he again wrote to the grievance officer (Doc. 151, p. 21). On July 8, 2022, he spoke with his counselor. On July 27, 2022, Correctional Officer Slinkard warned him about complaining (*Id.*). On September 1, Ziogas argues he wrote another grievance inquiring about his missing grievances. On September 8, he finally received a receipt for the grievance regarding the delays in care, but he never received a receipt for the grievance seeking the identities of staff (*Id.* at p. 22). On October 10, he again rewrote the grievance regarding the identities of staff involved in denying him medical care and resubmitted the grievance (*Id.*). Ziogas argues that on May 31, 2023, while talking with counselor Krista Allsup about another issue, he inquired about missing grievances, and Allsup noted that it would not be a good idea to file more grievances (*Id.* at pp. 22, 29). He later notes that on July 27, 2022, Slinkard also said that Ziogas should be careful about pursuing complaints at the prison and informed him that Allsup threw his grievances away (*Id.* at p. 30). On April 18, 2022, he received a response from the counselor regarding his three grievances and developed a "bad faith" in the grievance process (*Id.*). Ziogas argues that he was intimidated by these statements.

On October 20, 2024, Ziogas indicates that he submitted three more grievances in an attempt to identify the staff who denied his requests for medical care (Doc. 151, p. 30). On December 12, 2024, he transferred to Pontiac Correctional Center, and three days later he filed a grievance at Pontiac regarding his March 2022 incident and his missing grievances (*Id.*).

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

**A. Illinois Exhaustion Requirements**

As an IDOC inmate, Ziogas was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin.

Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the [ARB] within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance

should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## Discussion

In his response, Ziogas offers numerous justifications for his failure to exhaust his claims against Carbaugh, in hopes that one will stick. His response refers to his amended response to Carbaugh's original motion, a response that is 146 pages in length, including 48 pages of arguments and facts (Doc. 151). The pleading is well over the limit for a responsive brief and repeats arguments numerous times. Even considering the arguments raised in both responses, a number of his arguments are easily negated.

Ziogas argues that he faced a medical emergency and was unable to exhaust his administrative remedies, but he also claims he was able to file numerous grievances multiple times which refutes his claim that he was incapacitated. *Hurst v. Hantke*, 634 F.3d 409, 411-12 (7th Cir. 2011) (remedy is not available when a person is physically incapable of pursuing it); *Wilborn v. Ealey*, 881 F.3d 998, 1005-6 (7th Cir. 2018) (although incapacitation is good cause for a delay in submitting a grievance, a plaintiff must provide evidence that he is physically incapable of pursuing the grievance process). He alleges that he received threats from his counselor and various officers that intimidated him and caused him to lose faith in the

grievance process, but also claims he kept filing grievances, allegedly attempting to exhaust his claims several more times after those threats. He argues that the process at Menard was a dead-end, but his March 29, 2022 grievance was fully exhausted. He argues that the grievance process was futile because he only sought money damages, but futility is not an excuse. *Massey v. Helman*, 259 F.3d 641, 646 (7th Cir. 2001) ("an inmate must exhaust that process, even if he will not obtain the specific form of relief he desires"). Ziogas also argues that he lacked the space on one grievance to include all of his allegations, but the grievance on file has ample space remaining on the form. He even argues that his claim in this case is intertwined with the issue of exhaustion, preventing the granting of Carbaugh's summary judgment motion based on the Supreme Court's ruling in *Perttu v. Richards*, 605 U.S. 460 (2025).[4] But Ziogas's claim that Carbaugh was deliberately indifferent to his medical needs has no intertwinement with the issue of whether he was able to exhaust his administrative remedies. There are no allegations that the lack of care interfered with his ability to exhaust or that Carbaugh was involved in the grievance process at Menard. *Daniels v. Wills*, No. 24-CV-1397-DWD, 2025 WL 1984343, at *3 (S.D. Ill. July 17, 2025) ("*Perttu's* holding is limited to exhaustion issues that are intertwined with and have common factual disputes with the substantive claims"). Thus, *Perttu* is not implicated by the facts in this case.

Ziogas is left only with the argument that he submitted a grievance regarding the identities of the staff members, including Carbaugh, with his March 29, 2022 grievance and he never received a response. He claims that he resubmitted this grievance on at least two

[4] The Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460 (2025). Specifically, the Supreme Court held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id*. at 479.

occasions and filed another grievance once arriving at Pontiac. Ziogas does not include a copy of this grievance, nor does he have a copy of any of the allegedly re-written grievances.[5] But Ziogas does include two letters he sent regarding the grievance. On April 15, 2022, he submitted a note to the grievance officer asking about the status of the grievances he submitted in March (Doc. 151, p. 83). He specifically indicates that he submitted three grievances, including a grievance complaining about four correctional officers and a nurse (*Id.*). He was informed that there were no pending grievances (*Id.*). In December 2022, he submitted a letter to the attorney general for the State of Illinois, also identifying a missing grievance regarding the actions of the correctional officers and nurse (*Id.* at p. 71). The letters provide some evidence that a second grievance regarding the specific actions of staff was submitted but never recorded.

The receipt of the March 29, 2022 grievance in the record also suggests that there was some issues with the receipt of grievances at the prison. Although dated March 29, the grievance was not marked received until September 6, 2022 (Doc. 172-1, p. 41). There is no indication that any of the grievance officials found the grievance to be untimely. An entry in Ziogas's cumulative counseling summary acknowledges that the grievance is dated March 29, 2022, but it is received and forwarded to the clinical services for a response (Doc. 151, p. 61). The grievance officials' receipt of Grievance No. 63-9-22 as timely suggests that there was some sort of delay or issue with timely receipt of the grievance that was recognized by the officials (Doc. 151, p. 61). Ziogas contends that he submitted both Grievance No. 63-9-22 and the grievance with the identities of the officials involved in his care together, but only

[5] Ziogas's original pleadings only mentioned Grievance No. 63-9-22 (Docs. 1, pp. 18-21; 31, p. 30).

the one was ever received—and not until months later. Ziogas has offered some evidence that a second grievance existed, as well as evidence that there were delays and/or other issues with the grievance process that could have led to the second grievance not being received or documented by prison officials. At the very least, he has established a dispute of fact as to whether he submitted another grievance on March 29, 2022, regarding the correctional officers and nurse who denied his requests for care. *See Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (when there is a genuine dispute as to whether administrative remedies were available, an evidentiary hearing is required under *Pavey*). Because there is a dispute of fact as to whether Ziogas attempted to submit a grievance that was never recorded, Carbaugh's motion for summary judgment must be denied.

## CONCLUSION

For the reasons stated above, the motion for summary judgment for failure to exhaust administrative remedies (Doc. 172) is **DENIED**.

On or before **September 28, 2026**, Defendant Carbaugh may file a motion requesting a *Pavey* hearing, if she wishes to further pursue her affirmative defense, or a motion withdrawing the affirmative defense of exhaustion, if she does not wish to pursue her affirmative defense. Failure to respond to the Order will be deemed a waiver of the affirmative defense, and this matter will proceed to merits discovery.

**IT IS SO ORDERED.**

**DATED: September 14, 2026**



**NANCY J. ROSENSTENGEL**
**United States District Judge**